JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Darryl Sanders appeals his jury trial conviction for robbery. Although he was also convicted of kidnaping, he is not appealing that conviction. Defendant had known Ms. Peterson, the victim, for over thirty years, and they were related by marriage. One evening in February, as the victim was leaving her house, she saw defendant coming up her walk. When he asked where she was going, she responded she was going to the store. Because he said he would drive her, she entered his car.
 {¶ 2} After she was in the car, however, he drove in the opposite direction from the store. When she asked where he was going, he answered he was taking her to Home Depot to help him return some tools. She said she would not go to Home Depot and to let her out of the car. As he approached a stop sign, a woman whom the victim had not seen in the back seat of the car reached around the victim's neck and began to choke her. As the victim fought her off, defendant reached into the victim's coat pocket and took her money. She managed to get away and jumped out of the car.
 {¶ 3} She ran to a friend's house on the corner, but the friend was not home, so she ran to her own home. When she got inside the house, she shouted to her fourteen-year-old daughter she had been robbed. Knowing that defendant was going to give the victim a ride, the daughter asked whether he had been robbed too. The victim announced it was he who had robbed her.
 {¶ 4} The victim then told her daughter to go next door to call the police because their own phone was not working. The daughter went upstairs to dress to go next door, but when she returned downstairs, the victim decided she herself would go next door. The victim did not call the police, however, that evening. Instead, she called some relatives, including her former sister-in-law, defendant's wife. She explained she did not want to go through the hassle of a trial. Instead, she wanted to deal with the situation herself, by having defendant beaten up.
 {¶ 5} Six days after the robbery, defendant entered her house without knocking and confronted her about the money she told people he had stolen. They argued about the incident, and the victim testified that she was tempted to hit defendant with her son's scooter, but did not. Instead, she ordered him to leave. After he left, she went next door and called the police, who took her statement.
 {¶ 6} At trial, the victim and her fourteen-year-old daughter testified about the events of both days. The only other witnesses were the officer who went to the victim's home and the detective who interviewed her. The jury convicted defendant on both the robbery and the kidnaping counts, and he timely appealed.
 {¶ 7} Defendant states three assignments of error, which we will address out of order. For his second assignment of error, defendant states:
 {¶ 8} "II. Evidence presented was insufficient to support the robbery conviction."
 {¶ 9} Defendant claims that the state failed to provide sufficient evidence to support his robbery conviction, because there was no evidence to show that defendant himself ever used force against her or harmed her at the time he took her money.
 {¶ 10} The statute defines robbery as applied in this case as follows:
 {¶ 11} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 12} "* * *
 {¶ 13} (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 {¶ 14} (3) Use or threaten the immediate use of force against another."
 {¶ 15} Defendant does not dispute that the victim was harmed and force used or that her money taken. His point is that he was not responsible for any harm suffered or any force used. Defendant argues that by stealing the victim's money from her pocket, at worst he could be found guilty of a mere theft offense, because he only took advantage of the attack from the back seat.
 {¶ 16} When examining the sufficiency of the evidence, a reviewing court looks to see whether, when examining the evidence in a light most favorable to the prosecution, a rational trier of fact could decide that the essential elements of the crime were proven beyond a reasonable doubt. State v. Smith (1997), 80 Ohio St.3d 89. The element defendant claims is missing in this case is the use or threat of "the immediate use of force against another." R.C. 2911.02(a)(3).
 {¶ 17} Defendant argues that no evidence exists that he commanded the woman in the back to attack the victim or even that he authorized the attack. Defendant fails to note, however, that the trial court instructed the jury on the law concerning complicity, which states that it is a crime of complicity to: "(2) [a]id or abet another in committing [an] offense." R.C. 2923.03(A)(2).
 {¶ 18} By luring the victim into his car under the pretext of giving her a ride to the store and by heading the other direction, he provided the opportunity for her assault, which enabled the theft. These actions are sufficient to show complicity. Defendant aided and abetted the subsequent robbery by luring the victim into his car under false pretenses and by placing the victim within the control of the woman who was then able to hold the victim by the neck and to choke her while defendant took her money.
 {¶ 19} The facts, when viewed most favorably to the prosecution, are sufficient to support all the elements of robbery.
 {¶ 20} For his third assignment of error, defendant states:
 {¶ 21} "III. Robbery conviction was against the manifest weight of the evidence."
 {¶ 22} Defendant argues that even if the evidence is sufficient to support the prosecutor's point of view, the manifest weight of the evidence must be found to support acquittal. He claims that the evidence boils down to a "he said-she said" balancing act of the credibility of the parties, and that, given the victim's instability and lack of credible testimony, this court must find that his conviction is against the manifest weight of the evidence.
 {¶ 23} In determining a manifest weight challenge, a court must decide whether the greater amount of credible evidence supports the conviction. After reviewing the entire record, the court considers the credibility of the witnesses and then weighs the evidence. Smith, supra, at 114.
 {¶ 24} Defendant bases his assertion on the victim's alleged lack of credibility. Despite rigorous cross-examination, however, the victim did not contradict herself concerning the key events of the robbery. Although she became confused at times and was not as articulate as one would wish, she provided convincing details which all corroborated her testimony. Further, even if the jury did not consider the victim credible, the daughter's testimony was consistent with hers on all the essential facts. The daughter said that her mother came in shortly after leaving for the store, was hysterical, and stated that she had been robbed. The daughter's testimony concerning her mother's state of agitation and comments about defendant robbing her were entirely consistent with the victim's testimony.
 {¶ 25} Defendant did not put on a case. The only evidence to be considered, therefore, is the testimony of the victim and her daughter. This testimony was far from lacking in credibility: rather, it was consistent in all the important aspects, despite defense counsel's best attempts to elicit contradictory evidence.
 {¶ 26} The judgment is not against the manifest weight of the evidence.
 {¶ 27} For his first assignment of error, defendant states:
 {¶ 28} "I. Appellant was deprived of effective assistance of counsel where no objection was made to the state's witness's repeated comments impinging on appellant's Fifth Amendment right not to testify."
 {¶ 29} Defendant argues that, because the victim's repeated challenges to him from the witness stand regarding his actions on the day of the robbery violated his right to remain silent, his counsel was ineffective in not objecting to these comments.
 {¶ 30} In order to prevail on an ineffective assistance of counsel claim, defendant must show not only that his counsel's performance was so deficient that it denied him of a fair trial, but also that but for the deficient performance, it is reasonably probable that the outcome of the trial would have been different. Strickland v. Washington (1984),466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 31} The testimony defendant complains of was elicited by his own trial counsel during cross-examination of the victim. Counsel was trying to catch the victim contradicting her testimony. His questioning agitated her throughout cross-examination, particularly when he tried to get her to admit that she was drunk at the time she was robbed. Further, when the victim had difficulty understanding which of several incidents counsel was questioning her about, counsel tried to use her confusion to show that she was lying.
 {¶ 32} The victim was testifying to three different incidents: one in the summer of the previous year in which she had accompanied defendant to Home Depot and allowed him to use her identification to return some tools; the second, the day of the robbery; and, the third, the day defendant entered her house and argued with her about the robbery. The victim stated that on the first occasion, when she lent her identification to defendant at Home Depot, she was drunk and having difficulty walking. She was consistent in her testimony concerning the day of the robbery, however, when she stated she had only had one beer prior to the robbery. In fact, she said she was going to the convenience store to buy more beer. She consistently testified that the one beer she had drunk had made her "high," that is, had "given her a buzz." But she denied any problems with memory or thinking from the one beer.
 {¶ 33} Defendant objects specifically to the following comments when the victim addressed defendant from the stand:
 {¶ 34} "I don't know why you are sitting over there laughing, Darryl? I don't know why you are doing that?
 {¶ 35} You know you did this. You know you did this.
 {¶ 36} I thought you were my friend. You are nothing —" Tr. At 256-257.
 {¶ 37} First, nothing in this particular comment implies that defendant should take the stand and respond. Second, it is clear from the victim's statement that she is responding to provocation from the defendant, who is laughing at her while she testifies. This statement is not a challenge to defendant's right to remain silent, and counsel's failure to object to it does not constitute error.
 {¶ 38} The second comment defendant objects to occurred when counsel asked the victim at what time defendant offered her a ride on the day of the robbery. Expressing confusion over which day they were discussing, the victim said, "I was drunk that day — I wasn't drunk — yeah — no, I wasn't drunk that day." Counsel asked her, "You are sure you drank, right?" She responded, "You have got to ask Darryl; ask Darryl, sitting over there, laughing, but Darryl — what time did he come get me?
 {¶ 39} "He robbed me, and he should know everything." Tr. at 257-158. The victim was clearly agitated by defendant's demeanor during her testimony. In the next comment defendant objected to, the victim notes the change in defendant's demeanor. She stated, "You knew I was going to come to Court, and you knew I was going to do something, Darryl, and you knew I was.
 {¶ 40} "You were laughing, and now you are serious —." Tr. At 263. Defense counsel immediately responded to this statement by questioning her as to whether she was angry at defendant because she was jealous that he had another woman in the car, which reason she promptly denied.
 {¶ 41} On appeal, defendant also objects to the following victim's statement: "And, Darryl, don't even sit up there and be a lying man —." Tr. at 267. Defendant claims that this comment implies that he would take the stand to refute the victim's testimony or that any testimony defendant might give would be false. When the victim made this comment, defense counsel ignored it and continued to question her. It is clear from the witness' testimony that defendant was visually antagonizing her during cross-examination. She references his smirking at her and she repeatedly addresses comments to him.
 {¶ 42} The final allegedly objectionable statement is the victim's comment concerning getting defendant "beat up." The victim says:
 {¶ 43} "but I would have got you —.
 {¶ 44} "* * *
 {¶ 45} "— you could have asked me for that money. You could have, and you didn't have to do what you did.
 {¶ 46} You got money from me before. You never paid me back, but you could have asked me. That would have been better than taking it from me.
 {¶ 47} You know that you could have asked me —." Tr. at 272.
 {¶ 48} Even if the failure to object to any or all of these statements constituted substandard performance by defendant's counsel, defendant has failed to show that, but for these statements, the outcome of the trial would have been different. The evidence, as analyzed in the second and third assignments of error, strongly favors conviction.
 {¶ 49} Despite any possible prejudicial effect of the victim's statements directed at defendant from the witness stand, the outcome of the trial would not have been different without those comments.
 {¶ 50} The trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J. and FRANK D. CELEBREZZE, JR., J., concur.